IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSICA R. MARTINEZ,                         Case No.

    Plaintiff,

vs.                                                JURY TRIAL DEMANDED

COMMERCIAL RECOVERY SYSTEMS, INC.,
A Texas Profit Corporation,

    Defendant.
_____/

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

INTRODUCTION

1. This is an action for damages brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq* (hereinafter "FDCPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, *et seq* (hereinafter "FCCPA"); these laws, *inter alia*, prevent debt collectors and "persons" from engaging in abusive, deceptive, harassing, and unfair collection practices.

JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331, 1337, 1367, and Fla. Stat. § 559.77(1).

3. Venue lies in this District pursuant to 28 U.S.C. § 1391(d), as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

PARTIES

4. Plaintiff, JESSICA R. MARTINEZ, is an individual who is domiciled in the county of Hillsborough, state of Florida, and is a "consumer" as that term is defined by 15 U.S.C. §

1692a(3) and Fla. Stat. § 559.55(2), and is also a person with standing to bring a claim under the FDCPA by virtue of being directly affected by a violation of the Act.

5. Defendant, COMMERCIAL RECOVERY SYSTEMS, INC., is a foreign profit corporation, incorporated under the laws of the state of Texas, with its principal place of business located at 8035 EAST R L THORNTON FWY, STE 220, DALLAS TX 75228.

6. In the regular course of Defendant's business, the principal purpose of which is debt collection, Defendant uses instrumentalities of interstate commerce, and the mails.

7. Further, in the regular course of Defendant's business, it collects or attempts to collect debts owed or due or asserted to be owed or due another.

8. Lastly, Defendant's business activities in this state involve collecting or attempting to collect consumer debt from debtors located in this state by means of interstate communication originating from outside this state.

### FACTUAL ALLEGATIONS

Upon information and belief, the Plaintiff alleges as follows:

### December 30, 2012 Phone Call

9. On or about December 30, 2012 at about 3:19pm, the Plaintiff received a telephone call from number 469-453-8171 which originated from Texas.

10. When Plaintiff answered the call the female caller asked for Jessica Chesak.

11. Plaintiff asked who was calling.

12. In a rapid manner, the female caller advised that she was calling in regards to a mediation that the Plaintiff failed to appear for, which took place on December 4, 2012.

13. The female caller advised that the mediation was in regards to the collection of a debt allegedly arising from the repossession of a Chrysler PT Cruiser automobile.

14. Plaintiff again asked the caller for her identity.

15. The caller indicated that she was calling on behalf of CRS Recovery and identified herself as "Miss Sams."

16. It is alleged that Miss Sams advised Plaintiff that, since Plaintiff did not show up for the mediation that took place, a collection effort was being put into effect for wage garnishment and a tax lien.

17. Plaintiff explained to the caller that there she had no money coming in due to being unemployed for approximately two years.

18. The Plaintiff began to cry during this conversation.

19. The Plaintiff advised Miss Sams that Plaintiff's husband was the only person working in the household at the time and if wage garnishment took place, then her family would not have the means to support itself.

20. Plaintiff advised that they have a four-year-old child and are on food stamps and Medicaid.

21. Plaintiff further advised that they sold their only vehicle in order to use the funds for living costs, and they were currently living with her husband's mother.

22. Plaintiff also advised of some recent difficulties with the Internal Revenue Service by which Plaintiff and her husband unexpectedly owe approximately $5,340 more in taxes than they originally thought.

23. Miss Sams then insisted to Plaintiff that she borrow the money from a family member.

24. Miss Sams advised Plaintiff that Plaintiff owes $8,100.00 plus attorneys fees of $2,500.00.

25. Plaintiff advised Miss Sams that borrowing the money was not possible as all of her and her husband's family had "written them off."

26. Miss Sams answered, approximately to the effect that, "Well maybe if you started paying off some of your debt instead of incurring it you wouldn't have this problem."

27. Plaintiff was on the phone with Miss Sams for approximately 38 minutes trying to convince her that she and her husband simply did not have the means to pay this debt right now.

28. Miss Sams insisted that Plaintiff give her Plaintiff's husband's employment information so that Miss Sams could determine when his w2 would be issued and so that a wage garnishment could be set up with the employer.

29. Plaintiff refused to provide this information.

30. Miss Sams agreed to call Plaintiff back after indicating that she would speak with some "people" to try to get Plaintiff a phone number for the IRS so that Plaintiff could determine whether or not Plaintiff's taxes had been placed in a collectible status.

31. It is alleged that no mediation was actually scheduled to take place on December 4, 2012, as Defendant represented to Plaintiff.

### December 31, 2012 Phone Calls

32. It is alleged that, on or about December 31, 2012, Plaintiff received 4 calls within two minutes from Defendant; the times of the calls were 11:34am, 11:35am, 11:35am, and 11:36am.

33. Plaintiff called the number back and Miss Sams indicated that something was wrong with the line and that Miss Sams would call Plaintiff back once it was fixed.

34. Shortly thereafter, at about 11:55am, Plaintiff received a call from 469-335-2054.

35. Plaintiff answered the call and it was Miss Sams calling from her "other phone."

36. This call lasted approximately 13 minutes.

37. Miss Sams advised that she was calling to see what Plaintiff had decided.

38. Plaintiff asked Miss Sams for a settlement offer.

39. Miss Sams said she would approach the bank with an offer to settle for a lesser amount, about $3,400, and if the bank accepted that offer then Plaintiff could pay half of the settlement arrangement with her tax refund and then could arrange for the other half to be paid by wage garnishment, for which Miss Sams would need Plaintiff's husband's employment information and bank account information.

40. Miss Sams insisted that Plaintiff provide her husband's corporate information for his job so that Miss Sams could call to find out when his w2 would be issued by his company.

41. Plaintiff explained that her husband's company was closed until January 2, 2013 and that Plaintiff would call her on that day or the next day to give her the information she was requesting.

42. Miss Sams indicated that there was a deadline and if another attorney from her office took the file and signed off on it that she wouldn't be able to stop the wage garnishment or tax lien once the process began.

43. Plaintiff insisted that she understood the urgency of the matter and would call Miss Sams back when she had more information.

January 2, 2013 Phone Call

44. On January 2, 2013 at around 6:10pm Miss Sams called Plaintiff and advised that she had spoken to the bank and it agreed to the settlement offer of $3,400 and that she would waive the attorney's fees of $2,500.00 as a courtesy due to Plaintiff's situation.

45. Miss Sams wanted to know when Plaintiff would be able to take care of the settlement offer and again asked for Plaintiff's bank account information.

46. Miss Sams said that the settlement offer would only be good until January 15, 2013 and she needed to give her an answer immediately.

47. Plaintiff explained that she may have a relative that may be able to help but that the relative wanted to see a hard copy of the debt.

48. Miss Sams requested Plaintiff's address and agreed to send a letter.

<u>January 7, 2013 Phone Call</u>

49. On or about January 7, 2013 at around 11:56am Miss Sams called Plaintiff and asked if Plaintiff had received the bill yet.

50. Plaintiff answered that she had not.

51. Miss Sams said that the letter had been mailed out.

52. Miss Sams further advised that the deadline to accept the offer was now January 9, 2013.

53. Plaintiff advised that she understood the urgency of the situation but she absolutely needed actual evidence to take to her relative, so she must wait for the bill.

54. Miss Sams asked if Plaintiff had an email address.

55. Plaintiff advised that she did not have internet due to their financial situation.

56. Miss Sams then told Plaintiff to go to a library.

57. Plaintiff advised that she did not have a car to drive and had no money to take the bus.

58. Miss Sams then asked for Plaintiff's relative's email address so she could email the relative the bill.

59. Plaintiff advised that her relative did not have email due to her relative's age.

60. Miss Sams then told Plaintiff that she has a deadline of January 9th, and if Plaintiff can't give an answer by then Miss Sams would have to sign off on wage garnishment and a tax lien.

61. Plaintiff restated her financial situation and again stated her need for a hard copy of the bill in order to go to her relative to borrow $3,400.00.

62. Miss Sams stated that she would call back in a few days or Plaintiff could call her with her bank information once she received the bill.

### January 10, 2013 Phone Call

63. On or about January 10, 2013 Plaintiff received a telephone call from a male caller who stated that he was associated with the Hillsborough County Sheriff's office.

64. The caller ID system displayed the call as originating from HCSO.

65. The caller indicated to Plaintiff that he had been around her residence several times that day and he needed to know if Eugene Martinez (Plaintiff's Husband) and Jessica Chesak were present at the residence to be served for a lawsuit.

66. The caller indicated that the contact information regarding the lawsuit was "Miss Sams," and gave a contact telephone number of (469) 335-2054.

67. The caller indicated that, if Eugene was not available at the residence, then the caller would just go to Eugene's place of employment to serve him there.

68. Plaintiff told the caller that she did not want her husband served at his place of employment because her and her husband's personal matters should be of no concern to the people at her husband's place of employment.

69. The caller sarcastically stated that if it was necessary, then he would go to Eugene's job.

70. The caller asked Plaintiff what her husband's hours were and Plaintiff advised that they vary on a daily basis.

71. The caller then asked when her husband would be home.

72. Plaintiff then advised the caller that her husband was pulling into the driveway as they spoke and if the caller needed to serve them then she suggests that he come right away, and Plaintiff ended the phone call.

73. It is alleged that no person has appeared to serve Plaintiff or her husband since this phone call occurred.

74. It is alleged that this call was not actually placed by Hillsborough County Sheriff's Office, but that Defendant placed this telephone call to Plaintiff and deceptively made it appear that it originated from a government agency.

### January 15, 2013 Phone Call

75. On or about January 15, 2013 the Plaintiff received a call from a caller identifying himself as "Robert from the IRS."

76. The caller ID system showed that the call came from the US Government.

77. "Robert" indicated that he was calling to advise of a lien/garnishment that had been placed on Plaintiff's taxes.

78. "Robert" provided contact information regarding the lien/garnishment as "Miss Sams," at telephone number (469) 335-2054.

79. Robert advised Plaintiff that a debt/garnishment with the IRS was public information and he could give it out to whoever he wished.

80. It is alleged that this call was not actually placed by the IRS or the US Government, but that Defendant placed this telephone call to Plaintiff and deceptively made it appear that it originated from the government.

81. It is alleged that these calls were harassing to Plaintiff.

82. It is alleged that Defendant was attempting to collect an alleged defaulted obligation alleged to have been originally incurred for Plaintiff's personal, family, or household purposes.

83. As a result of Defendant's acts or omissions Plaintiff suffered actual damages in the forms of manifestations of stress and other mental anguish.

## -Count I-
## Violations of the Federal Fair Debt Collection Practices Act

Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 83.

84. The foregoing acts and omissions of Defendant and its employees/agents constitute numerous and several violations of the FDCPA, including, but not limited to, 15 U.S.C. §§ 1692d generally, 1692d(5), 1692e generally, 1692e(4), 1692e(5), 1692e(7), 1692e(10), 1692e(14), and 1692g(a).

85. As a result of the above violations of the FDCPA, Plaintiff is entitled to recovery for actual damages, statutory damages, and attorney's fees and costs.

## -Count II-
## Violations of the Florida Consumer Collection Practices Act

Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 83.

86. The foregoing acts and omissions of Defendant and its employees/agents constitute violation(s) of the FCCPA, including, but not limited to, Fla. Stat. §§ 559.72(1), 559.72(9).

87. As a result of the above violation(s) of the FCCPA, Plaintiff is entitled to a declaratory judgment that Defendant's conduct violated the FDCPA and FCCPA, and recovery for actual damages, statutory damages, punitive damages, and attorney's fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment against Defendant for the following:

a. Declaratory Judgment that Defendant's acts constituted violations of the FDCPA and FCCPA, pursuant to Fla. Stat. § 559.77(2);

b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1) and Fla. Stat. § 559.77(2);

c. Statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A) and Fla. Stat. § 559.77(2);

d. Punitive damages, pursuant to Fla. Stat. § 559.77(2);

e. Costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3) and Fla. Stat. § 559.77(2); and

f. Such other and further relief that this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury in this action.

Respectfully submitted,

/s/ Joseph B. Battaglia
Joseph B. Battaglia, Esquire
Fla. Bar No.: 0058199
THE GOLDEN LAW GROUP
808 Oakfield Drive, Suite A
Brandon, Florida 33511
Telephone: (813) 413-8700
Facsimile: (813) 413-8701
joe@brandonlawyer.com